May it please the Court, my name is John Bryson from the Department of Justice on behalf of the Appellant Energy Department. With me at council table is Michael Zevenbergen of the Department of Justice and Barbara Williamson of the Department of Energy. I would reserve five minutes for rebuttal. One of the Energy Department's critical missions is to clean up the various national defense facilities around the country that have generated radioactive waste. One category of this waste is transuranic waste, and when that waste is mixed with other wastes that are deemed hazardous under the Resource Recovery and Conservation and Recovery Act, the transuranic waste becomes subject to that regulatory scheme. But Congress has authorized, and the Energy Department has constructed, an underground disposal facility in New Mexico for the national defense transuranic waste, known as the Waste Isolation Pilot Plant, or WIPP. And the Department has begun disposing of this waste there. It's undisputed that Congress authorized the Department to dispose of such waste at WIPP without further treating it to meet the treatment standards of the hazardous waste laws, because such treatment is unnecessary. It's also undisputed that while the waste is at Hanford, the DOE's facility at Hanford, and being stored there, it is subject to the hazardous waste laws, or the safety laws there. I couldn't hear that last sentence. The exemption that Congress granted is from the land disposal restrictions of the hazardous waste laws, but it's not an exemption that extends to the safe storage requirements of the hazardous waste laws. So while the waste is at Hanford and in storage, awaiting shipment to WIPP, it must meet the hazardous waste laws, the federal and here the state law requirements for safe storage. What's at issue here is whether the small subset of hazardous waste restrictions for land disposal of certain waste was exempted by Congress, and that those land disposal restrictions say that you either treat waste or you get a determination that treatment is not necessary to dispose of it, it can be safely disposed of. And the effect of that determination is that since you do not undertake the costly expense of treating the waste for the purpose of disposal, because it's unnecessary, while you store the waste, while you're waiting to put it in the disposal site, you do not have to treat it. So this case, let me just make sure I understand how this case, well, there's quite a history between the Department of Energy and the State of Washington, but as I understand what happened here was the district court granted an injunction? What happened That apparently DOE was contemplating moving waste from other parts of the country to Hanford. That's correct, Your Honor. To Hanford. Right. Because supposedly DOE had designated that waste for WIPP. There are two things that DOE has done. There's a process for designating what transuranic waste will eventually be disposed of at WIPP, but there's a second very complicated process which the Department of Energy has been engaged in for 10 years of deciding how the waste in the entire complex, the national complex, shall be managed, which includes Hanford and many other sites around the country. And part of that process is determining whether, from a management point of view, some waste should be transferred to other sites temporarily before its ultimate fate is determined. And what happened in this case was that DOE had a facility in Ohio called Battelle, which had a small amount of this transuranic waste, and in order to complete the process of closing that facility, it made a decision published in the Federal Register that it would transfer that waste to Hanford, where it would go through the same process that the transuranic waste at Hanford is there already, and then eventually go to WIPP. But would that transuranic waste that came from Ohio, or intended to be planted, that you're planning to ship from Ohio, has that been designated to go to WIPP? Yes. It was included in all the designations. Now, everything, at least under the Department of Energy's theory, everything in the country can be designated, because ultimately it's going to end up at WIPP. It could, but not everything. Almost all of its holdings of transuranic national defense waste is already designated to go to WIPP, but there are a certain small percentage of them that have not made a final decision about it. So there is an ongoing process of deciding where we've got a certain... But when you say go to WIPP, there's no time provision to go to WIPP? No, there's no statutory provision in the statute that authorizes the construction of WIPP that sets a final time for it. I don't know, I can't say, I'm not just familiar with the permit for the facility, which is issued by the State of New Mexico, but there may be something in there. But there is no time, but there are constraints, because it is an extremely complicated process, because it's a very serious and dangerous class of waste. So there is a very complicated, integrated process in the State of New Mexico about what has to be certified before it can be shipped. Right, I was just going to ask you that. So there's this general, you're talking about a general designation that this, in the complex throughout the United States, all these facilities, that this transuranic waste is designated to go ultimately to WIPP sometime in the future. Before it can actually go to WIPP, it has to be certified as acceptable to WIPP. That's correct. So how is it really designated then to go to WIPP? It's designated in the sense that, and it's not a general... It's maybe contemplated that this waste might go to WIPP, but is it really designated to go to WIPP? Yes, because it's not, and it's not a blanket sort of general designation. These records of decision examine and describe the inventory of waste in all these facilities in terms of where they are, what their characteristics are, and makes a determination that... Transuranic mixed waste ultimately goes to WIPP? No, almost all of it that is known will go to WIPP. There's a small portion in which the designation hasn't been finally determined with respect to which. Well, why hasn't it been? What's pending now? I don't know. The record doesn't reflect exactly why they haven't reached that point. They made designations that cover the vast majority of the waste. What happens to the rest of it? I'm sorry? What happens to the rest of it? It's subject to state regulation? Yes. All of it is subject to state regulation while it is in these facilities, if it's mixed waste, because it has hazardous elements. But it's only protected, as you said, for storage purposes. That's right, but they're very rigorous. But your whole argument is they don't need to treat it, though, and do anything else to it. That's right. That's what this whole case is about. That's right. The whole case is about whether they have to treat it. Right. And here... And you go to Section 9 and you claim this exemption. Right. And the exemption we submit... But the small portion that's not designated, the states do treat, or you treat? We don't treat. I don't think there's been made any decisions about treating it at the moment. But it would have to make a decision about whether it's ultimately going to be designated. Whether it's actually being treated right now, I don't have that information. But I'm just saying that the designation... Well, if it's not designated, wouldn't the law require that it be treated? I think so, Your Honor, but it may be covered by these agreements with the states that are in force, you know, how it's being handled and so on. It all comes out of nuclear plants, is that...? All this waste that we're talking about comes from national defense facilities, and like Hanford was the site of construction of atomic weapons. This is a weapons program. Right. That's correct, Your Honor. Is there any trans-ceramic mixed waste at WIPP that is not there for disposal? No. No. The only... Everything that arrives at WIPP is there to be disposed of. I mean, it may temporarily be at the surface level because the package has to be unpacked and so on. But it's there for disposal. But it's all there for disposal and it's disposed of in the WIPP. Now, our submission is that the district court erred when it said the plain language of the statute limits the exemption to waste that arrives at WIPP. And when Congress created the exemption, it used a specific phrase, with respect to trans-ceramic mixed waste designated by the secretary for disposal at WIPP. Now, that language is plain and clear on its face. It's not limited to a specific geographic location. It's not the only language that's there. It's not the only language, Your Honor. And the district court recognized that that language is not limited geographically, but it concluded that it could essentially give no effect to that language by relying on this other phrase at the beginning of Section 9A1 that says that the specified environmental laws comply with, quote, with respect to WIPP. But the phrase with respect to WIPP is very different from the phrase with respect to trans-ceramic waste designated by the secretary for disposal at WIPP. And for the district court to rely on the with respect to WIPP language contravenes the established canon of statutory interpretation that what Congress uses as different language is presumed to be intentional. And also, the district court's reading would completely read out this designation process. In effect, the district court was saying that the only operative language says with respect to trans-ceramic waste that is at WIPP. But that's not what the language says of either the section, the portion that the district court relied on or what is really the operative language, which is the exemption. And finally, the district court's interpretation is not saved by the fact that it's not a separate section of the statute. The exemption is according to the amending language of the Defense Appropriations Act. The instruction of Congress was to place this exemption below and under Section 901, 9A1. And consequently, Congress is quite clear this is a separate sentence. It's not a sub-portion of one of those subsections. It's still part of the same section, though. It's still part of the same section, Your Honor. And the case law is clear. Even this Court's own cases would allow language in a separate sentence to be given a fact different from language in another sentence when the language is different. And we cited in our reply brief the archetypal example of that, which is the United States v. FSJ, which construes a criminal statute, which is one long set of paragraphs. It has no subsections or whatever. And can designated be given any meaning other than the State takes the position that it only applies to property already at will, which would seem to virtually eliminate the clause. You say that everything can be designated for disposal at whip, even if it may be 100 years away. Is there any reasonable reading of designated for disposal at whip that would be less than covering all trans-uramic mixed waste, wherever it is, in which case they didn't need designated for disposal at whip at all, because they just could have said all trans-uramic mixed waste, which is really the government's position. Well, no. The government's position, Your Honor, is that Congress used the phrase designated for disposal at whip by the Secretary. That says that the Secretary is supposed to make a decision. And the Congress knew when it authorized whip what the universe was of this. They could have just said all. They could have said it all, but they delegated that authority. They obviously didn't mean it all. They meant the portion that the Secretary was designating for disposal. That's right, Your Honor. And where he has to end that. And that is the only language in the statute that puts a condition on the application of the exemption that has to be designated. And the issue here is whether that exemption language has implied in it a limitation to waste that arrives at whip. That's what I'm saying. Assume it doesn't just apply to waste that's already there. And it also doesn't intend to apply to all waste. But it meant that the Secretary should reasonably designate a portion of that waste. Is there any reading of that provision that would limit it to a reasonable designation so that it didn't just include all waste, but the portion that the Secretary would designate to get there within a reasonable time, for instance, to make a reasonable designation? No, because I don't think that the delegation of authority to the Secretary is limited in any way that way. And Congress wrote on the slate, this is an enormous problem. It's going to take decades to solve. It's going to take decades to organize this waste through a process to be disposed of at whip. And it entrusted the Secretary of Energy with the authority to carry out that process. So, and, but that's not, but I don't think that's an issue. Whether you would imply a question of reasonableness or not, or a time limit implied, still doesn't change the plain language of the exemption, which is not limited to. But I don't think you can read the exemption just in isolation. Of course not, Your Honor. But the question is, does the plain language of the exemption, is it further limited by this general language at the top of Section 981 with respect to whip? A phrase itself, which is somewhat ambiguous, because it doesn't say with respect to waste that's already at whip. Well, it's clear that Congress is talking about the location. It's talking about the disposal site in New Mexico with this statute. It says with respect to whip. Now, whip is not some amorphous concept. Whip is a location, a specific location in New Mexico, where they found this spot where they could go down thousands of feet. That's correct, Your Honor. In salt, you know, salt. But the source of the waste. And they're talking about a particular location. Right. They're talking about the waste isolation pilot project. Right. And the disposal site is a particular location. But the source of the waste is, was well known to Congress that it was in all these different facilities in other states, and that there would be a complicated process for deciding that it should go to whip and what should be done to it before it could go into whip and things of that nature. Well, does this result in ambiguity, then, or what? What's the relation between these two pieces of language? The relation? Well, one also has to pay attention to the fact that the with respect to whip language was in the statute as originally enacted in 1992, which did not have the exemption at that time. So it says DOE shall comply with these laws with respect to whip. That's the location. Yeah. All those environmental laws, they had to comply in developing the whip site. That's right, Your Honor. But in 1996, it came along that Congress decided an exemption was appropriate. Well, they were trying to get around all this delay with the no-migration determination. Yes, that's correct. The EPA had to make it. That's right. It was taking too long and there was too much going on. That was their decision. It was the Department of Energy. Congress just took care of it and granted them a no-migration determination. That's right. That's basically what happened. That's right, happened. And the effect of that was to say you don't have to treat this for the purpose of disposal and EPA clearly Not whip. Well, EPA's clear position in its regulations and its promulgation of the regulations, if you don't have to treat it for disposal, you also do not have to adhere to the storage limitations, the one-year process. Let me ask you, when they were thinking about Maybe this was a question that Judge Reinhart asked early on, but, you know, in the scheme of things, does DOE have some sort of grand plan of how long it's going to take to move all this waste from around the United States and eventually get it to whip? I think, yes, I'm sure there are documents because they've gone through an elaborate Are we talking ten years? Are we talking five years? Are we talking, you know, a century? Probably 40, 50 years, maybe like that. In the meantime, do you agree just to say that all this waste can sit around the country indefinitely? It's subject to requirements for safety. For safety. For safety, but that's a whole range of safety issues. You know, is it going to cause a risk to the environment or to human health or anything like that? Those requirements remain in place and they What requirements don't remain in place? The requirements to treat the waste Well, there must be some reason for the requirements to treat waste. It's to treat for the purpose of assuring that when it's disposed of, it doesn't cause environmental damage or other health problems when it's disposed of in land. And what Congress determined was that there were other standards for that DOE has to meet in order to protect the environment and the public from radiation risks that were totally adequate to ensure that this waste, untreated, can be safely put in ware. And once that determination is made But the waste is not, while it's a waiting disposal for 40 or 50 years, it's not more dangerous in any way because it's not treated? It only will be What's suspended is only what affects its safety at the time it's buried? That's a technical issue, Your Honor. I mean, I don't think it's a matter of deciding that it's more or less dangerous. The RCRA safe storage requirements have standards of their own to protect the public health and the environment. What I'm really trying to find out is the ones that under the government's theory they no longer have to follow, that they would if it weren't designated. Those things that are suspended, do they only affect the safety of the waste when it's buried so that it doesn't matter what happens to it in the meantime? Or are they standards that will affect the safety, environmental or otherwise, of the waste while it's a waiting shipment? I think the answer is that the effect of treatment is considered to be unnecessary in order to meet the safe storage requirements. This waste is all stored in cans, isn't it? Well, it's stored in drums and various other kinds of things, all of which has been approved and is not disputed by the State of Washington, and that's adequate protection for that waste while it's there. The biggest problem is leakage, isn't it? Right, Your Honor. The safe storage requirements address that. What did I say? Transuranic. Transuranic waste. Does this all consist of the same ingredients? No, Your Honor, because it could be, my understanding, it could be something as mundane as work gloves that have contamination on them, or it could be liquid or it could be metal parts or things of that nature. And the Secretary has never promulgated any regulations defining designation, is that correct? That's correct, Your Honor, but he's published the Federal Register Notice, which is cited in our brief, in which he said the process by which he publishes records of decision in the Federal Register, which are supported by NEPA analyses, are designations on its desk. But does that, is that, that's not subject to notice and comment and all that? Oh, yes, Your Honor, yes. These records of decisions are, go through a NEPA process. They're going through a whole public proposal. It doesn't result in a rule, does it? No, it's a decision. It's, I mean, technically under the APA it's an informal adjudication, which is all these various administrative decisions that are issued by agencies which are not formal rulemaking. But it's within the discretion of an agency as to whether to announce its interpretation or its decisions through that process or through formal rulemaking. All right, we'll give you a couple of minutes for rebuttal. Oh, you've got more than a couple of minutes. Good morning, Your Honors. My name is Andrew A. Fitz, Assistant Attorney General on behalf of the State of Washington. Your Honor, this case, this whole case is not about forcing mixed transuranic waste to treatment. It's about whether the State of Washington has the right to impose a schedule on the Department of Energy for either getting the waste in an untreated form to WIPP, not 50 years in the future, but something that's more reasonable, taking into account all the circumstances. Or, in the alternative, if DOE never accomplishes that, then having the waste treated. In 1992, Congress did two things to eliminate decades of waste. What is the effect of the treatment? Does that make it safer for burial? Or is it less safe prior to the burial period? Yes, it is. And there was a lot of discussion about these safe storage requirements under RCRA. But the safe storage requirements were in place when Congress created something called the storage prohibition. Congress said, even with the safe storage requirements, having waste stored indefinitely is not a good idea. So the idea of treatment is to get it into a form that's ready for land disposal. Now, in the case of WIPP, if the transuranic waste actually goes there, Congress has determined that it's safe to dispose it at that location, untreated. And the State of Washington is fine with that, so long as the material actually goes to WIPP. In 1992, Congress did two things to eliminate decades of waste stockpiling at DOE sites. And I'll note that at Hanford, what we're talking about, there were two cases that converged here, basically. But one of them related to waste that's been stored on site since before the 1970s, since after the 1970s, in unlined burial trenches. DOE is in the process of exhuming that waste right now. It's in direct contact with soil. But it's already blanket designated, all of that, as transuranic waste for disposal at WIPP, even though it hasn't yet confirmed that all of it is transuranic waste. So the first thing Congress did in 1992 was pass the Federal Facility Compliance Act. The FFCA created a program of state enforcement through the storage prohibition to put DOE on a schedule for addressing its backlogs of mixed waste around the whole DOE complex. The second thing Congress did in the same session was to pass the original Land Withdrawal Act to open up the WIPP repository specifically for transuranic waste. The issue in this case is whether four years later, when Congress amended the Land Withdrawal Act to further streamline the disposal of transuranic waste, it dismantled the system of state enforcement it had created through the FFCA, and it removed the obligation that actually compels DOE to move TRUMP to WIPP. This is a statutory construction issue, and at every level of its arguments, in order to get this to happen I mean, this does not represent my colleagues' views, I suspect. I just don't see even any argument about what respect to transuranic mixed waste designated by the Secretary for Disposal at WIPP can mean. All waste that's already at WIPP is going to be disposed, disposed of in disposal. And the only thing that clause can mean is transuranic mixed waste that is not yet at WIPP, that's been designated to go to WIPP. I'll respectfully disagree, Your Honor. I think there are three reasons. What else does it mean? What does the phrase transuranic mixed waste designated by the Secretary for Disposal at WIPP mean? What waste is that? It's waste that the Secretary has decided in his discretion, and we allow that DOE has the discretion to decide this, that a certain class of transuranic waste is appropriate for disposal at WIPP. But the operation of that phrase still continues under our reading for three reasons. First, it identifies the only class of hazardous waste that can be disposed at WIPP without first being treated. In other words, you know, I can't generate hazardous waste in any other walk of life and have it go untreated at WIPP. It's only transuranic waste. This is the exception Congress has carved out. Only transuranic waste designated by the Secretary can avoid those treatment requirements. Secondly, it allows DOE to identify the states as Where is that waste located that you're talking about? It's located in a number of states around the country. So that gets rid of the argument that we're only talking about waste that is at WIPP. But our reading is that the operative effect of that in terms of affecting the storage prohibition only kicks in at the physical location identified by Congress in the WIPP Land Withdrawal Act. That's the WIPP repository. So they would have to designate a particular transuranic waste at Hanford, specific transuranic waste at Hanford that would say these drums are designated to go to WIPP. They could do that. They could do that. Not just a blanket category that exists throughout the country. Well, to be honest, we considered making the argument that the Secretary was arbitrarily capricious in designating all of mixed transuranic waste that has been designated to this point. And there was ample evidence that DOE had no procedures, that it was basically an ad hoc designation that was made. But we felt that there was discretion afforded to the Secretary, and that was an uphill battle. Whether the Secretary has been arbitrarily capricious, you know, we've not alleged that in this case. But that doesn't – our reading doesn't depend on making that argument. I must say, I just have trouble understanding your argument. What is it? You say the Secretary can designate transuranic mixed waste at Hanford. So what is your position, then? What's he doing – what's your disagreement? Our disagreement is the effect of that designation. What DOE argues is that by operation of law, once the Secretary designates transuranic waste for disposal at WIPP, that that eliminates the effect of the storage prohibition wherever that waste may be located, in Washington, Idaho, Tennessee, Colorado, what have you. Well, it says with respect to transuranic mixed waste that he's designated. And you concede that that can be waste anywhere in the country. We do concede that. But what we argue is that Congress did not intend the effect of that designation to eliminate the storage prohibition, as DOE insists. It says with respect to that waste, which is located all around the country, such waste is exempt from treatment standards. Now, you say that, doesn't that mean that waste is exempt? Absolutely. Because the storage prohibition, the words of the statute, is that it prohibits the storage of waste. It only allows the storage of waste to accumulate sufficient quantities to effectuate proper recovery, treatment, or disposal. And here, by bringing the transuranic waste from Hanford to WIPP, they are disposing of the waste. The bottom line is that treating waste is not the only remedy to a storage prohibition violation. Let me go back to try to understand this language. With respect to transuranic mixed waste designated by the Secretary for Disposal at WIPP, that means transuranic waste wherever it is located, Hanford, anywhere else. They designate it there. Then such waste is exempt from treatment standards promulgated, and you say that it's not exempt from treatment standards until it gets to WIPP. Is that it? We're saying it's only exempt from treatment standards when and if it actually goes into the ground at WIPP. It's not exempt from treatment standards if they decide to dispose of it somewhere other than WIPP. And this is part of the problem with DOE's reading of it. They focus on the act of the Secretary's designation as having all the legal effect here. And if you take their argument to its logical extreme, it's not just the storage prohibition then that's affected if the Secretary designates. It's also that act of designation would eliminate this class of waste from treatment standards anywhere the way DOE reads it It's not hinged on the waste actually having to go to WIPP. So the effect of this, which DOE says is speculative, but we say absurd, is that the absolute legal consequence of their interpretation is that designated mixed transuranic waste could not only be stored anywhere indefinitely, but it could be disposed anywhere, not just WIPP, free of treatment standards by the act of designation, which they say is the key operative legal principle here. Your Honors, turning back to my argument, there are four main points. Number one, if you look at the language of Section 9A1 as a whole, Congress chose to put the exemption language in an existing subsection that pertained to the application of laws to the WIPP facility. Congress could have set out this exemption if it clearly wanted to show that it had effect beyond WIPP in a new separate subsection, but it put it in an existing subsection. And the FSJ case cited by the United States is distinguishable here. That was a statute with no subsections whatsoever that went on for 12 paragraphs, 1,300 words, covered a variety of topics. In the Land Withdrawal Act, Congress clearly showed an affinity to break the subjects into subsections. So the implication, the simple conclusion to draw is that Congress meant this exemption to only apply at WIPP. To only apply once it's got to WIPP? The legal effect of the exemption to only the exemption from treatment standards and the disposal prohibition to only have legal effect at WIPP. The Secretary can designate. Then how does it why did you need that provision at all? It's treated like all other waste when it gets to WIPP, right? Right. But not all other waste is exempted from those requirements. It's only the specific class of waste that Congress has carved out. The other waste that's at WIPP is not exempt from those requirements? To my knowledge, there isn't other waste. But if there were to be other waste. Isn't there waste at WIPP now? Oh, there is transuranic waste. I'm speaking of waste other than. No, no. Okay. Now, what about the transuranic waste at WIPP? Is it exempted from those same requirements? Under our argument, yes. It would be exempted from the storage prohibition at the WIPP facility. Then why do you need this provision at all to say with respect to transuranic mixed waste designated for disposal at WIPP? You say that doesn't apply until it gets to WIPP. But the other waste that's already at WIPP is already exempt from that. It's exempted from. . . Now, remember, the exemption is from the disposal prohibition and the need to meet treatment standards. But only once it's at WIPP. Once it's at WIPP to go into the ground. And all other transuranic waste that's at WIPP is exempt anyway? The only waste at WIPP that is exempt is that waste. Transuranic waste. Which has been designated by the Secretary. This adds nothing to the statute. It does, Your Honor. I mean, I think it adds a very critical thing. If the law is that all transuranic waste at WIPP is exempt from it, then this would become exempt as soon as it arrived at WIPP. So this clause adds nothing to the statute. But that's not what Congress said. What Congress said is, number one, the Secretary has the discretion. Congress is granting the Secretary the discretion to decide what transuranic waste is appropriate to be disposed at WIPP. And with respect to that specific category of waste, Congress has carved out this narrow exemption from the disposal prohibitions and need to meet treatment standards under RCRA. Once it arrives at WIPP. Right. Which it would have been subject to anyway. It otherwise would be subject to those prohibitions, but for the act of the Secretary's designation. I really don't understand what you think this additional provision changes. Well, without that language, without that exemption language, transuranic waste that goes to WIPP would otherwise be subject to the disposal prohibition and otherwise have to meet those conditions. After it got to WIPP? Yes, without the exemption. So what the exemption does is once the Secretary designates a class of waste, it allows that class of waste only to be disposed of at the WIPP facility only without having to meet treatment standards. But I thought that the transuranic waste already at WIPP was subject to those exemptions. Not if it hasn't been designated. It's only the transuranic waste that's been designated by the Secretary. But the transuranic waste that's at WIPP now is not subject to any exemptions? It is. What's already gone into the ground has been designated by the Secretary. And what's waiting to go into the ground has been designated by the Secretary. Correct, to the best of my knowledge. Well, it can't go into the ground unless it's been designated. That's correct. That's correct. So that whenever it got to WIPP, it would be designated by the Secretary anyway and be exempt from this. Presumably the Secretary wouldn't send it to WIPP unless he were prepared to designate it. So you didn't need this section at all. That would have been the case even without this new section. Well, without the section, there wouldn't be any exemption from those prohibitions. Once it got to WIPP? No. No. That's the effect of the exemption. The effect of the exemption is to give the Secretary the ability to designate a class of waste to go into the ground at WIPP free of the disposal prohibition. So without that exemption, the material already at WIPP couldn't be exempted? Correct. It's the exemption that allows it to go into the ground untreated. But an entirely different issue is whether that means that once designated, you eliminate the storage prohibition around the country. If we take it up one step further in the Land Withdrawal Act and we look at the savings provisions, those savings provisions only identify an effect on EPA and the State of New Mexico, implying in the simplest conclusion Congress didn't intend to affect the authority of the State of Washington at Hanford. Now, if we take it up even one step further, if you consider the statute to be ambiguous, then the legislative history is very clear that the purpose of the exemption is to speed the disposal of waste at WIPP, but the root cause of that is to get the waste out of these DOE sites around the country. And with respect to that, you have to consider the related context of the Federal Facility Compliance Act, which this was enacted in almost in tandem with. At the same time Congress enacted these amendments, DOE was entering into site treatment plans with Tennessee and Colorado that set out a schedule for the waste to go to WIPP free of treatment. Because, again, as I said at the outset, the storage prohibition can be satisfied by sending the waste untreated to WIPP. There is no conflict between those provisions. What do you mean by the storage prohibition? What the storage prohibition provides is that basically you can't stockpile waste, which DOE has done for decades. It says that you either have to treat it as you go, or if you can dispose of it in an untreated form, you dispose of it as you go. Now, there's such a tremendous backlog of this material that it can't all go to WIPP overnight. We all acknowledge that. And the state in this case has negotiated a schedule with the Department of Energy for it to go to WIPP from Hanford. The only issue is whether we have that authority, whether this exemption language takes away the driver at the front end that assures that the transuranic waste will actually go to WIPP. And the track record of DOE, with all due respect, has been abysmal over the years. That's the very reason we have the Federal Facility Compliance Act to begin with. You can't store it anywhere except at WIPP permanently. That's correct. That's correct. That's the implication of our argument. So just can you sum up for me then how you would, what language you would use to interpret this clause? We would interpret that clause to give the Secretary the discretion to designate transuranic waste to go to WIPP and be disposed of free of those LDR prohibitions. But we would read the effect of that to only eliminate those LDR prohibitions at the WIPP facility itself and not affect the storage prohibition around the country. Without this new section designated by the Secretary for Disposal at WIPP, you're saying without that they never could have dispensed with those statutory provisions at WIPP itself? They were going through a process with EPA to try and get what's called a no-migration determination to dispense of those requirements. It basically would have had the same practical effect. But one point I want to make is that what Congress did here doesn't equate to a no-migration determination. It's similar. But if you look at the statute, 6924, there isn't anything in there that, what it provides is that if waste is prohibited from one or more methods of land disposal, then the storage prohibition attaches. We maintain that this waste is land disposal restricted everywhere in the country but at WIPP. Now, under EPA's rules, they have a specific process to go through that's specific to a small category of waste. It has to be fully characterized, and there's a time duration that's attached to it. Congress didn't adopt that system with this language. That's part of why you can't directly equate the effect of a no-migration determination with this exemption language. Your Honors, the plain language of the subsection, the Land Withdrawal Act as the whole, and the legislative history all support Washington's position. We ask that you affirm the summary judgment in favor of the State of Washington. Thank you. Thank you, Kevin. Your Honor, I have a couple short points here. Congress in 1992 did indeed pass the Federal Facility Compliance Act, which applies to DOE's management at Hanford. But in 1996, it exempted a portion of a waste stream from one of those requirements, which is the land restricted disposal requirements, one of which is small. That's 624M? 624? I mean 6924? Yes, right. And subsection J says, in the case of any hazardous waste which is prohibitive from one or more methods of land disposal, then there is a storage restriction. But the point is that Congress said this is not prohibitive from land disposal, so the storage restriction is not in place. Your Honor, I would point out that this DOE didn't make a blanket designation about this. The Federal Register notice of 1998, which is at 63 Federal Register 3624, is the Department of Energy's record of decision, based on all the NEPA documents, about sending waste, designating waste to be sent to WIPP. And at 3628, it says the Department will dispose of up to 175,000 cubic meters. It's all based on information about where that waste is and its whole complex. So it is as specific as can be. Let me ask you one question about this clause for just one second before you finish up all your time. It says the other part of this language is for disposal. The designation, yes. It contemplates that within a reasonable time, For disposal means it can't possibly mean for disposal 50 years from now. Congress was fully informed of the magnitude of this problem. It understood that this was a horrendously large quantity of waste, some of which was disposed at a time when there were no restrictions or requirements for environmental safety and so on. It's long history. It understood that there was an enormous inventory of this waste. And so it could not do anything but say to DOE, you are responsible for disposing of it properly, and DOE, you manage how long it's going to take. And enormous amounts of money are invested in this process. The process has started. Significant amounts of waste has gone from Hanford to Whiff for disposal and is disposed of. It's just going to take a long time. What happens to the storage restriction under your interpretation? The storage restriction is inapplicable. It's inapplicable. It does not apply under the terms. My question is can you store this stuff all over the country outside of New Mexico under your interpretation? Yes. Well, that's where almost all of it is at the moment. I know it is. Untreated. It's untreated, but it's regulated for its safety. And eventually it will be disposed of. How long is eventually? That's what we're dealing with. Well, it's a question of enormous magnitude, and Congress, is there nowhere in any of this language that says Congress set a particular time limit? And it would be foolish to have done so. This is another yucca mountain. Well, this one's open, Your Honor. Yucca mountain's not open yet, but yucca mountain's next. Is it correct that without this additional language that the waste that was already at Whiff was not exempt from these provisions? Yes, that's correct, Your Honor. So this was necessary in order to exempt the waste already at Whiff and all waste coming to Whiff? That's right. And before Congress enacted the exemption, EPA was in the process of an administrative process implementing this restriction of determining whether there would be no migration, which would have, and if EPA had been allowed to complete that process and granted that petition, then the waste that's at Whiff would not have to be treated. But until EPA finished that process, that waste was subject to treatment requirements before it could be disposed of. But Congress short-circuited the process for determining that such treatment is not necessary, and the automatic effect of that was to say the storage restrictions do not apply. Are there no further questions? Thank you, counsel. Okay. Court will stand and recess for the day.
judges: Reinhardt, Paez, Cudahy